[NOT FOR PUBLICATION]

 United States Court of Appeals
 For the First Circuit

 

No. 96-1827

 UNITED STATES,
 Appellee,

 v.

 EVELYN LHERISSON,
 Defendant - Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Michael A. Ponsor, U.S. District Judge] 

 

 Before

 Boudin, Circuit Judge, 

 John R. Gibson,* Senior Circuit Judge, 

 and Pollak,** Senior District Judge. 

 

 John L. Roberts, by appointment of the Court, for appellant. 
 Andrew Levchuk, Assistant United States Attorney, with whom 
Donald K. Stern, United States Attorney, was on brief for 
appellee.

 

 December 2, 1997
 

  

* Of the Eighth Circuit, sitting by designation.

** Of the Eastern District of Pennsylvania, sitting by
designation.

 Per Curiam. Evelyn Lherisson was convicted of one Per Curiam. 

count of bank fraud, in violation of 18 U.S.C. 1344, and three

counts of making false statements to a federally insured

financial institution, in violation of 18 U.S.C. 1014. On

appeal she argues that (1) the government engaged in selective

prosecution in prosecuting her but not the more culpable

principal of the fraud, (2) that she received ineffective

assistance of counsel, and (3) that there was insufficient

evidence to support the jury s findings of guilt on any of the

four counts of which she was convicted. Because we find no

reversible error, we affirm.

 I.

 In July of 1988, Evelyn Lherisson, who represented

herself as the trustee of a substantial family trust located in

the Cayman Islands (the "LPH trust"), was introduced to Mary Anne

Krupsak, a partner in the Albany office of a New York law firm.

At the time, Krupsak was a shareholder in Valyte International, a

small corporation that was undergoing financial difficulty.

Lherisson told Krupsak that she was interested in using her

family trust s assets to help small businesses such as Valyte and

gave Krupsak various documents that purported to confirm some of

the trust s assets.

 In the fall of 1988, Valyte began negotiations with

Heritage NIS-Bank for Savings concerning a $350,000 line of

credit Heritage had extended to Valyte. Valyte had drawn heavily

on the line of credit and Heritage had lost some confidence in

 -2- -2-

Valyte s ability to pay its debts. On December 27, 1988, Krupsak

and the other shareholders met with Heritage officer Michael

Audette and Heritage attorney Steven Weiss to discuss the

possibility of individual Valyte shareholders providing

additional collateral for the loans in exchange for Heritage not

calling in Valyte s obligations. At that meeting Krupsak

informed Audette and Weiss that Evelyn Lherisson might be able to

assist in providing collateral for Valyte s obligations to

Heritage. Audette then spoke on the phone with Lherisson, who

advised him that she would obtain a letter of credit for $1

million as additional collateral for the Valyte loan.

 On December 29, 1988, a $1 million letter of credit

made out to Krupsak and drawn on the First Investment Bank of

Garland, Texas, was faxed to Heritage. Heritage told Krupsak

that it wanted the letter modified to name Heritage as

beneficiary instead of Krupsak. Krupsak testified that she

related this request, along with other proposed modifications to

the December 29, 1988 letter of credit, to Lherisson, who replied

that she would not modify the letter but that she would send a

new letter of credit to replace it. Krupsak told Heritage of

Lherisson s plan to send a new letter of credit and, as an

interim measure, assigned her interest in the December 29, 1988

letter of credit to Heritage.

 On March 24, 1989, Heritage received a document,

bearing the signature of Lherisson as trustee of the LPH trust,

constituting a $1 million letter of credit to Heritage.

 -3- -3-

Thereafter, Lherisson and Krupsak commenced negotiations with

Heritage for a $4 million loan to Valyte to be secured by assets

of the LPH trust. On April 29, 1989, in support of the loan

application, Krupsak faxed a copy of an "Irrevocable Trust

Agreement" and a separate specimen "Trust Agreement" both of

which were signed by Lherisson. On May 8, 1989, Heritage

received a letter, signed by Krupsak s secretary on behalf of

Lherisson, which stated that the proposed $4 million loan would

be collateralized by United States Treasury notes.

 At trial, the government introduced evidence that

neither the First Investment Bank of Garland nor the LPH trust

ever existed. The tax identification number used by Lherisson

for the LPH trust was not assigned to any person or business and

the registrar of the Cayman Islands testified that no such trust

was registered with his office. A handwriting expert testified

that the signature on the March 24, 1989 letter of credit was in

fact Lherisson s, and Krupsak s secretary testified that she

never signed or sent any correspondence on behalf of Lherisson

without being directed to do so by Lherisson herself.

 The jury found Lherisson guilty of one count of bank

fraud, in violation of 18 U.S.C. 1344, and three counts of

making false statements to a federally insured financial

institution, in violation of 18 U.S.C. 1014. The false

statement counts were based on: 1) the $1 million December 29,

1988 letter of credit; 2) the $1 million March 24, 1989 letter of

credit; and 3) the May 8, 1989 letter.

 -4- -4-

 Post-trial, Lherisson underwent a psychiatric

examination. At sentencing, Lherisson s attorney asserted that

Lherisson suffered from delusions and was operating in a

diminished mental state during the time she was communicating

with Krupsak and Heritage. The district court sentenced

Lherisson to 15 months imprisonment and three years supervised

release.

 II.

 Lherisson advances three arguments in this appeal.

First, Lherisson argues that her convictions arose from selective

prosecution because the government chose to prosecute her ("an

indigent black woman who was suffering from a severe mental

disability") and not Mary Anne Krupsak (a "white, non-disabled

person" with "political and financial clout"). Second, Lherisson

claims that she received ineffective assistance of counsel.

Third, Lherisson claims that there was insufficient evidence to

support the jury s verdict.

 Lherisson did not raise her selective prosecution claim

prior to trial as required by Fed. R. Crim. P. 12(b), and

therefore has waived this claim, Fed. R. Crim. P. 12(f), see also 

Tracey v. United States, 739 F.2d 679, 682 (1st Cir. 1984), cert. 

denied, 469 U.S. 1109 (1985), unless "exceptional circumstances" 

exist which excuse her failure to raise the claim in a timely

fashion. See United States v. Gary, 74 F.3d 304, 313 (1st Cir.), 

cert. denied, 116 S. Ct. 2567 (1996). Lherisson argues that her 

claim of selective prosecution became manifest only after trial

 -5- -5-

when the District Court ordered and obtained reports on her

mental condition.

 Lherisson attributes her failure to undergo psychiatric

evaluation (and hence her failure to raise the claim of selective

prosecution) prior to trial to the ineffectiveness of her trial

counsel. However, Lherisson did not raise the claim of

ineffective assistance of counsel before the district court, and

therefore we are left without the factual development necessary

for adequate review. Accordingly, we will follow our customary

practice of not addressing claims of ineffective assistance

raised for the first time on appeal. See United States v. 

Carrington, 96 F.3d 1, 6 (1st Cir. 1996), cert. denied, 117 S. 

Ct. 1328 (1997). Our declination to consider this issue now is

without prejudice to Lherisson s entitlement to raise the issue

in a collateral challenge to her conviction. See United States 

v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). 

 In her final claim, Lherisson argues that there was

insufficient evidence to support the jury s verdict. This claim

takes two forms. First, she asserts that she could not be

convicted of aiding and abetting without evidence of a culpable

principal. However, on each count the district court instructed

the jury in conformity with 18 U.S.C. 2(b), which provides

that:

 [w]hoever willfully causes an act to be done
 which if directly performed by him or another
 would be an offense against the United
 States, is punishable as a principal.

18 U.S.C. 2(b). Under this section, a culpable principal is

 -6- -6-

not required. "[A] defendant may be convicted as an aider and

abettor through proof that he caused an innocent person to commit

a criminal offense." United States v. Tashjian, 660 F.2d 829, 

842 n.26 (1st Cir.)(alterations and internal quotation marks

omitted), cert. denied, 454 U.S. 1102 (1981); see also United 

States v. Dodd, 43 F.3d 759, 762-63 (1st Cir. 1995).  

 Lherisson also argues that the government did not show

that her statements to Heritage were made with the intent to

defraud. Where a defendant challenges the sufficiency of the

evidence, this court must look to see "whether, drawing all

inferences in the government s favor, a rational jury could find

guilt beyond a reasonable doubt." United States v. Montilla- 

Rivera, 115 F.3d 1060, 1063 (1st Cir. 1997). Lherisson does not 

dispute that the trust never existed and that the letters of

December 29, 1988, March 24, 1989, and May 8, 1989 were false.

Audette and Krupsak both testified that Lherisson was aware that

Valyte s negotiations with Heritage were for the purpose of

preventing Heritage from calling in Valyte s loans or obtaining

new loans for Valyte. A jury could have reasonably inferred that

Lherisson knew the trust did not exist and that, in making

statements about the trust to Krupsak and representatives of

Heritage at a time she knew that they believed she was going to

use the trust s assets to help Valyte in its negotiations with

Heritage, Lherisson intended to defraud Heritage. The jury s

verdict is therefore supported by sufficient evidence.

 III.

 -7- -7-

 For the foregoing reasons, the judgment of the district

court is affirmed.

 -8- -8-